**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMERIBANK, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JACK A. BALDINI; DAVID G. COGSWELL; LOUIS J. DUNHAM; MICHAEL O'BRIEN; and JAMES SUTTON,**<br><br>**Defendants.** | ) | **Civil Action No. 1:12-7050**<br><br>**Judge David A. Faber** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT JAMES M. SUTTON'S MOTION TO DISMISS**

Defendant James M. Sutton ("Sutton"), by and through his attorneys, moves to dismiss the Complaint of the Federal Deposit Insurance Corporation, as receiver for Ameribank, Inc. (the "FDIC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Sutton also adopts and incorporates by reference herein the following discussions in the Memorandum of Law in Support of Defendant Jack A. Baldini's Rule 12(b)(6) Motion to Dismiss (the "Baldini Motion"): Statement of Material Allegations; Legal Standard; and Argument Sections I.A., I.B., and II.B. Those discussions in the Baldini Motion are equally applicable to Sutton.

## PRELIMINARY STATEMENT

This lawsuit stems from losses suffered by Ameribank, Inc. ("Ameribank") in 2007 and 2008, during the financial crisis that nearly brought down the entire global economy. Beginning in late 2006, the housing market experienced an unprecedented crisis – real estate values

plummeted, while unemployment and borrower delinquency rates skyrocketed. Ameribank, like hundreds of other banks, was ruined by the crisis and closed in September 2008.

The FDIC, as receiver for Ameribank, ignores these catastrophic economic forces and instead claims that the former officers of Ameribank, including Sutton, should be held personally liable for losses allegedly arising from "risky" and "deficient" loans funded by the bank. But this is not a case in which self-dealing, disloyalty or some other corporate skullduggery is alleged. The FDIC simply alleges that the officers of Ameribank should have done more and made better business decisions.

Far more is required to state a claim under West Virginia law. The business decisions of corporate officers may not be second-guessed, and officers may not be held personally liable for those decisions, except in the most egregious circumstances amounting to reckless or intentional conduct. Such circumstances are not alleged here because they do not exist. The FDIC's Complaint therefore should be dismissed for failure to state a claim.

Specifically, Count I, the negligence claim, and Count III, the breach of fiduciary duty claim, should be dismissed because the business judgment rule protects bank officers and directors from personal liability for claims based on ordinary negligence. These claims are invalid bases to impose personal liability on bank officers as a matter of law.

Count II, the FDIC's claim for gross negligence, must also be dismissed because the FDIC has not plausibly alleged – and cannot plausibly allege – that defendants acted with utter disregard for prudence, the standard for a gross negligence claim. Indeed, documents referenced in the Complaint reveal a far more plausible case of non-negligent conduct.

Finally, even if the FDIC could state a claim, the FDIC sues based on officer conduct only. Mr. Sutton was an officer of Ameribank for 29 days during the period at issue and only

two of the 32 loans the FDIC calls deficient were funded in that 29-day period. The FDIC's Complaint with respect to the other 30 loans should be dismissed as to Sutton.

## BACKGROUND

Sutton joins and incorporates by reference the "Statement of Material Allegations" in the Baldini Motion. In addition to that discussion, Sutton notes that, during the period at issue in this lawsuit, he was an officer of Ameribank for only 29 days – from December 21, 2006 until January 18, 2007. Cplt ¶ 16. The FDIC also alleges – without any support – that Sutton "functioned" as an officer after January 18, 2007. *Id.* ¶ 18. Sutton is not alleged to have been an officer, or to have had "oversight responsibility," prior to December 21, 2006.

## ARGUMENT

Sutton joins and incorporates by reference the "Legal Standard" discussion in the Baldini Motion. In addition, pursuant to 12 U.S.C. § 1821(k) and *Atherton v. FDIC*, 519 U.S. 213 (1997), West Virginia substantive law governs all three of the FDIC's claims.

### I. The Ordinary Negligence (Count I) and Breach of Fiduciary Duty (Count III) Claims Are Foreclosed by the Business Judgment Rule

The FDIC claims Sutton was negligent and breached his fiduciary duty of care for allegedly (i) failing to supervise Bristol's loan originations, Cplt ¶¶ 1, 131-135, 154, and (ii) negligently funding 32 Bristol loans. *Id.* ¶¶ 136-142. Insofar as these claims are couched in negligence, they are barred as a matter of law by the business judgment rule.

The West Virginia business judgment rule forecloses claims for ordinary negligence against corporate officers and directors. *Masinter v. WEBCO Co.*, 262 S.E.2d 433, 438 (1980) ("officers and directors are . . . accorded a rather broad latitude in the conduct of corporate affairs. . . . It is a rule of general application that if there is no fraud or bad faith by the directors, [in exercising their discretion] . . . courts have no right to interfere with such discretion."); *Elliott*

*v. Farmers' Bank*, 57 S.E. 242, 248 (1907) (evaluating claims against officers and directors based on gross negligence standard) (citing *Marshall v. Farmers' Sav. Bank*, 8 S.E. 586, 591 (1889) ("the managing officers of corporations are personally liable for the results of gross negligence.")). *Accord Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) ("As generally formulated and applied in corporate litigation the rule is that courts should defer to – should not interfere with – decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their 'business discretion.'").

Because of the relative sparseness of West Virginia authority describing the business judgment rule, the West Virginia Supreme Court in *Masinter* cited the law of Delaware where corporate law doctrines are more developed. 262 S.E.2d 438. The business judgment rule in Delaware also insulates directors and officers from liability for ordinary negligence. *Aronson v. Lewis*, 473 A.2d 805, 812, 813 (Del. 1984) ("a long line of Delaware cases hold that director liability is predicated on a standard which is less exacting than simple negligence"; "under the business judgment rule director liability is predicated upon concepts of gross negligence"); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651 (Del. Ch. Ct. 2008) ("Precisely so as to ensure that directors are not unduly hampered in taking good faith risks, our law eschews the use of a simple negligence standard. Even where it is possible to hold directors responsible for a breach of the duty of care, Delaware law requires that Directors have acted with gross negligence."). The business judgment rule similarly protects officers and directors from breach of fiduciary duty of care claims absent allegations of gross negligence or disloyalty. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009).

Both directors and officers are protected by the business judgment rule. *Masinter*, 262

S.E.2d at 438 ("officers and directors are . . . accorded a rather broad latitude in the conduct of corporate affairs") (emphasis added); *Elliott*, 57 S.E. at 248 ("officers and directors . . . are personally liable for frauds and losses resulting from gross negligence") (emphasis added).[1] The law in Delaware is the same. *Int'l Ass'n v. Absolute Entl. Serv., Inc.*, 814 F. Supp. 392, 405 (D. Del. 1993) ("under Delaware law the business decisions of officers and directors are protected by the heavy presumption of the business judgment rule") (emphasis added); *Cinerama, Inc. v. Technicolor*, 663 A.2d 1156, 1162 (Del. 1995) ("the business-judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments") (emphasis added). *See also* PRINCIPLES OF CORPORATE GOVERNANCE ANALYSIS AND RECOMMENDATIONS § 4.01(c) cmt. a (Am. Law Inst. 1994) ("Sound public policy points in the direction of holding officers to the same duty of care and business judgment standards as directors."); *Selcke v. Bove*, 258 Ill. App. 3d 932, 935 (Ill. App. Ct. 1st Dist. 1994) ("A substantial number of courts from other jurisdictions, however, have clearly articulated that the business judgment rule protects corporate officers as well as corporate directors.") (citing cases).

The two bases alleged in support of its ordinary negligence and fiduciary duty claims cannot overcome the protection afforded by the business judgment rule. First, the FDIC's allegation of a "fail[ure] to properly supervise" requires allegations of bad faith, not mere negligence. *Citigroup*, 964 A.2d at 123 ("a showing of bad faith is a *necessary condition* to director oversight liability"). Second, the allegations of "negligence in funding loans" are based

---

1 The provisions of the West Virginia Corporations Act addressing directors and officers, W. Va. Code Ch. 31D, Art. 8, do not abrogate the common law business judgment rule adopted by the West Virginia Supreme Court of Appeals in *Masinter* and *Elliott*. *See FDIC v. Whitley*, 2:12-cv-00170-WCO, slip. op. at 10 (N.D. Ga. Dec. 10, 2012) ("The business judgment rule is not a creature of statute; it is a judicial policy that is subject to judicial discretion and interpretation.). *See also* Baldini Motion at Section I.A.1.

entirely on negligence. *See* Cplt ¶¶ 136-142. The business judgment rule protects Sutton, an Ameribank director and officer (for 29 days), from conduct short of gross negligence, whether framed as negligence or breach of fiduciary duty. The claims are not viable as a matter of law.

A court in the Northern District of Georgia addressed almost exactly the same case last month. *FDIC v. Whitley*, 2:12-cv-00170-WCO (N.D. Ga. Dec. 10, 2012). There, the FDIC sued directors and the president of a Georgia bank that was closed in 2009. The FDIC alleged that the executives' negligent approval of several "high-risk acquisition, development and construction transactions" over two years led to the bank's closing. *Id.* at 2. The court concluded the claim was not legally viable because "the business judgment rule forecloses liability in officers and directors for ordinary negligence in discharging their duties." *Id.* at 12. The court dismissed the negligence claim against the bank executives. The same outcome is warranted here.[2]

**II. The Complaint Fails to State a Plausible Claim for Gross Negligence (Count II)**

The bar for proving gross negligence is high in West Virginia; gross negligence generally means "an absence of slight diligence or scant care and . . . an utter disregard for prudence, amounting to complete neglect." *Rutecki v. CSX Hotels, Inc.*, No. 5:05-cv-00226, 2007 U.S. Dist. LEXIS 3181, at **34-35 (S.D. W. Va. Jan. 16, 2007), *aff'd*, 290 Fed. Appx. 537 (4th Cir. 2008). To survive a motion to dismiss, the FDIC must state plausible grounds in support of its

2 *See also FDIC v. Briscoe*, No. 1:11-02303-SCJ, 2012 U.S. Dist. Lexis 153603, at *13 (N.D. Ga. Aug. 14, 2012) ("the Court finds that when Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not viable"); *FDIC v. Skow*, 1:11-cv-00111-SCJ, slip op. at 19 (N.D. Ga. Feb. 27, 2012) ("In light of this authority and the application of the business judgment rule, the Court finds that the [FDIC]'s claims for ordinary negligence and breach of fiduciary duty based upon ordinary negligence fail to state a claim upon which relief can be granted."); *See also Resolution Trust Corp. v. Hovnanian*, Civ. No. 94-450, 1994 U.S. Dist. LEXIS 19359, at *22 (D.N.J. Oct. 11, 1994) ("as a matter [of] law, the RTC's simple negligence cause of action must be struck because, under the New Jersey business judgment rule, directors are only liable for acts which amount to gross negligence.")

claim of utter disregard and complete neglect; facts suggesting "the mere possibility of misconduct" are not good enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And where there are "obvious alternative explanations" suggesting lawful conduct rather than unlawful conduct, the claim must be dismissed. *Id.* at 682.

The FDIC's gross negligence claim is almost entirely conclusory. The FDIC attempts to allege one "significant" fact: "Most significantly, [defendants] turned a blind eye to regulators' warnings." Cplt ¶ 147. In support of that allegation, the FDIC cites an August 8, 2006 Report by Ameribank's primary regulator, the Office of Thrift Supervision ("OTS"), which, according to the FDIC, states there is "inherent risk in the portfolio, since the lending base is calculated based on 'as improved values.'" Cplt ¶ 84. But the FDIC only tells a fraction of the story, and a misleading fraction at that; the full quotation self-servingly excised by the FDIC is:

> To date, management has been very satisfied with the delinquency rate of 0.6 percent and the current portfolio average yield of 8.0 percent. While there is inherent risk in the portfolio, since the lending base is calculated based on "as improved values," management believes systems in place internally and at [Bristol] mitigate concerns. Furthermore, the rehabilitation of these non-owner occupied residential properties is thoroughly documented by [Bristol], with distribution of escrow funds made only upon completion as verified by documented inspections. Maturity of the credits is typically 12 months or less (the rehabilitation phase) which lessens Ameribank's exposure.

August 8, 2006 OTS Report ("OTS Report") at 3 (Exhibit 1 to Motion to Dismiss).[3] The OTS also concluded in its Report:

- "Our [Field Visit] review yielded ***no material concerns*** that would require a written response on the part of management and the board."

[3] The Court may consider the August 8, 2006 OTS Report in connection with this Motion to Dismiss because the Report is quoted, relied upon and, therefore, incorporated by reference in the FDIC's Complaint. Cplt ¶ 84; *Witthorn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-397 (4th Cir. 2006). To meet the plausibility test under *Twombly* and *Iqbal* and overcome a motion to dismiss, the FDIC should not be permitted to distort unfairly the context in which the defendants' conduct occurred, particularly where, as here, the context is the subject of judicial notice.

- "Operating results are ahead of business plan projections and asset quality performance remains strong."
- "Processes in place to oversee higher risk lending activities are acceptable and continue to evolve."
- "We found overall operating performance to be strong and in line with business plan projections."
- "Credit administration practices and the internal asset review . . . process have been fully developed and are in place for all three operating divisions."
- Improvements in performance driven by "continued strong collection by [Bristol] on the serviced portfolio"
- "To further alleviate risk, management conducts internal reviews on any CRA borrower that has a total relationship with the bank in excess of $500 thousand. A random sample of reviews was conducted [by the OTS], which revealed ample information and additional means of effective monitoring."

*Id.* at 1-3, 14. The full context of the OTS Report reveals regulatory *understanding and comfort* – not "regulators' warnings." The theory alleged by the FDIC in support of its gross negligence claim is not supported.

Indeed, the FDIC's current hindsight position – that defendants were grossly negligent in allowing Ameribank to fund loans originated by Bristol Mortgage in 2006 and 2007 – is a complete about-face from bank regulators' assessments at the time the loans were funded. Those contemporaneous assessments, as set forth in the quotations above, reveal the implausibility of the FDIC's gross negligence claim. It makes no sense to say that defendants acted with "an utter disregard of prudence and complete neglect" when regulators, after focusing specifically on the bank's business with Bristol during a field visit, concluded there were "no material concerns" and that, in fact, "Credit administration practices and the internal asset review process have been fully developed." *Id.* at 1, 14. The claim that defendants acted grossly negligently is not plausible in light of this context. The FDIC's allegations are refuted by the very documents it cites.

Moreover, there is an "obvious alternative explanation" for Ameribank's losses: the crash of the housing market, along with the broader economy, that began in late 2006. That

financial crisis resulted in massive loan defaults where there had been few before and losses to Ameribank that far exceeded the bank's prior, reasonable expectations.

Defendants can hardly be blamed for not having the prescience to see this financial crisis coming. The FDIC did not see the crisis coming either. As the FDIC admitted in Congressional testimony, "FDIC examiners explained that no one could have predicted the precipitous fall in home prices and the complete shut-down of the secondary [mortgage] market."[4] Nor did the nation's most senior banking regulator expect the crisis. In his February 14, 2007 *Semiannual Monetary Report to Congress*, Federal Reserve Chairman Ben Bernanke stated, "Despite the ongoing adjustments in the housing sector, overall economic prospects for households remain good. Household finances appear generally solid, and delinquency rates on most types of consumer loans and residential mortgages remain low."[5] Indeed, Bernanke later described the market crisis that resulted in Ameribank's losses as "a perfect storm" that regulators could not have anticipated.[6]

When viewed in the proper context of relevant facts, it is not plausible that the defendants' conduct amounted to an "utter disregard of prudence" and "complete neglect" with respect to loans funded by the bank. The Court can readily infer obvious alternative explanations from all of the pertinent facts, other than defendants' conduct, for losses that are the subject of the FDIC's claims. The gross negligence claim should be dismissed for failure to state a claim.

---

4 OFFICES OF INSPECTOR GENERAL, DEP'T OF THE TREASURY AND FED. DEPOSIT INS. CORP., *Evaluation of Federal Regulatory Oversight of Washington Mutual Bank*, Report No. EVAL 10-002, at 46 (April 2010), *available at* http://fdicoig.gov/reports10%5C10-002EV.pdf.

5 *Available at* www.federalreserve.gov/newsevents/testimony/bernanke20070214a.htm.

6 FINANCIAL CRISIS INQUIRY COMM'N, *Financial Crisis Inquiry Report: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States*, p. 3 (January 2011), *available at* www.gpo.gov/fdsys/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf.

### III. Sutton Cannot Be Liable for Loans Approved When He Was Not an Officer

Even if the FDIC could state a claim for negligence and/or gross negligence – it cannot – Sutton cannot be liable for the approval of 30 of the 32 "deficient loans" identified by the FDIC because he was not an officer when those 30 loans were funded.

Sutton, Baldini, and Dunham all served as directors of Ameribank at some point but the FDIC sues the defendants "only for their acts and omissions as officers." Cplt ¶ 11. The FDIC admits that Sutton was an officer for less than a month – from December 21, 2006 to January 18, 2007 – during the relevant period.

The FDIC alleges that defendants should not have funded "32 deficient loans." Cplt ¶ 87. But, according to the FDIC, ***only two of those loans were funded during the 29-day period when Sutton was an officer***. *See* Cplt ¶¶ 92-124. Inasmuch as the Complaint targets officer conduct only, Sutton cannot be liable for the 30 loans funded when we has not an officer.

Recognizing this, the FDIC meekly alleges that Sutton, while not an officer, "functioned" as an officer for several months after January 18, 2007. Cplt ¶ 18. But Ameribank's Bylaws provided "The officers of the savings bank shall be a president, one or more vice presidents, a secretary, and a treasurer or comptroller, each of whom shall be elected by the board of directors." After January 18, 2007, Sutton was none of those things, nor does the FDIC allege that he was.

To the extent the FDIC means to suggest Sutton was a *de facto* officer, the FDIC has pled nothing in support of that theory. The West Virginia Supreme Court of Appeals has defined a *de facto* officer as one who (i) held himself out as an officer even though he had not been appointed or elected such by the board, or (ii) was appointed or elected as an officer but some defect in the appointment or election prevented him from *de jure* authority as an officer. *West Virginia v. Wyoming Cty. Corr. Officer Civil Serv. Comm'n*, 412 S.E.2d 237, 240 (W. Va. 1991). Neither of

these conditions existed in Sutton's case and, in any event, the FDIC has not plead these conditions. Moreover, "in order to be a *de facto* officer the position which a person occupies must have a *de jure* existence." *Id.* The FDIC does not even identify the officer position Sutton purportedly functionally occupied. The FDIC's allegation that Sutton "functioned" as an officer after January 18, 2007 is totally conclusory and should be rejected.[7]

Accordingly, the FDIC's Complaint with respect to the 30 loans approved when Sutton was not an officer should be dismissed as to Sutton.

## CONCLUSION

For the reasons set forth above, and for the reasons stated in the sections of the Baldini Motion that are specifically adopted and incoporated herein, Sutton respectfully requests that the Court grant this motion and dismiss the FDIC's claims with prejudice.

Dated: January 14, 2013

Respectfully Submitted,

s/ Michael W. Carey
Michael W. Carey (WV Bar No. 635)
Carey, Scott, Douglas & Kessler, PLLC
P.O. Box 913
Charleston, WV 25323-0913
telephone: (304) 345-1234
facsimile: (304) 342-1105
mwcarey@csdlawfirm.com

Matthew P. Bosher (VA Bar No.75894 )
Hunton & Williams LLP
951 East Byrd Street
Richmond, VA 23219
telephone: (804) 788-8200
Facsimile: (804) 788-8218
mbosher@hunton.com

*Attorneys for Defendant James M. Sutton*

[7] Even if Sutton had served "functionally" as an executive officer after January 18, 2007 as the FDIC alleges, the FDIC does not allege that reviewing loan files was among his responsibilities in that period. Indeed, it is highly unlikely that a purported executive officer would be responsible for such a review and it is axiomatic that corporate officers are permitted to rely on lower-ranking employees for such tasks.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMERIBANK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:12-7050** |
| **JACK A. BALDINI; DAVID G. COGSWELL; LOUIS J. DUNHAM; MICHAEL O'BRIEN; and JAMES SUTTON,** | ) | **Judge David A. Faber** |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify "Memorandum of Law In Support of Defendant James M. Sutton's Motion To Dismiss", was served upon the following counsel of record via the court's ECF filing system on 14th day of January, 2013.

| | |
|---|---|
| Frederick J. Springer, Esq.<br>Elizabeth W. Neiberger, Esq.<br>Bryant Miller Olive P.A.<br>101 North Monroe Street, Suite 900<br>Tallahassee, FL 32301<br>Telephone: (850) 222-8611<br>Email: fspringer@bmolaw.com<br>Email: eneiberger@bmolaw.com<br><br>Michael F. Gibson, Esq.<br>Gibson, Lefler & Associates<br>1345 Mercer Street<br>Princeton, WV 24740<br>Telephone: (304) 425-8276<br>Email: gla@citlink.net | Julia A. Chincheck, Esq.<br>J. Mark Adkins, Esq.<br>Floyd E. Boone, Jr., Esq.<br>Bowles Rice LLP<br>600 Quarrier Street<br>Charleston, WV 25301<br>Telephone: (304) 347-1713<br>Email: jchincheck@bowlesrice.com<br>Email: madkins@bowlesrice.com<br>Email: fboone@bowlesrice.com |

/s/ Michael W. Carey
Michael W. Carey, WVSB #635