**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, as Receiver for** | ) | |
| **AMERIBANK, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:12-7050** |
| | ) | |
| **JACK A. BALDINI,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has filed a Motion for Protective Order Concerning Discovery of Electronically Stored Information [ESI] and Supporting Brief. (Document No. 56.) Defendants have filed their responses in opposition to Plaintiff's Motion. (Document Nos. 59, 60 and 61.) Plaintiff has filed its Reply in Support of its Motion. (Document No. 62.) The Court held a hearing upon Plaintiff's Motion for Protective Order Concerning Discovery of ESI. Having considered the issues presented in writing and verbally and applicable law, the Court concludes that Plaintiff's Motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 26, 2012, Plaintiff filed a Complaint naming Mr. Jack Baldini, Mr. David Cogswell, Mr. Louis Dunham, Mr. Michael O'Brien and Mr. James Sutton as Defendants. (Document No. 1.) Plaintiff alleges that in 2004 Mr. Dunham, Ameribank's President and CEO, executed a Mortgage Loan Sale and Servicing Agreement with Bristol Home Mortgage Lending, LLC, d.b.a. LendingOne [Bristol]. Under the agreement, Ameribank agreed to fund construction and rehabilitation account [CRA] loans which Bristol presented and certified were in conformity with

its policies and underwriting standards. Plaintiff alleges that Defendants "failed to adequately monitor or supervise the Bank's funding of Bristol-originated loans during the periods when each was responsible for overseeing Bristol's activities." (Id., ¶ 62.) Plaintiff further alleges that Defendants disregarded repeated warnings of Office of Thrift Supervision regulators regarding the risks associated with Ameribank's continuing to fund loans which Bristol presented. Finally, Plaintiff alleges, Ameribank failed on September 19, 2007. (Id., ¶ 90.) Plaintiff provides 32 examples of "deficient loans" funded between September 30, 2006, and September 30, 2007, "after examiners had repeatedly warned Defendants about the risks associated with Bristol-originated CRA loans." Plaintiff alleges respecting these loans that Ameribank did not sign loan approval forms for 21 of the 32 loans and funded the loans without obtaining sufficient information about the borrower's financial conditions, personal guarantees and appraisals and in amounts in excess of established limitations. (Id., ¶¶ 91 - 124.) Thus, Plaintiff claims that Defendants (1) acted negligently in failing to supervise Ameribank's relationship with Bristol and allowing Ameribank to fund loans originating through Bristol; (2) acted with gross negligence and are liable under the Financial Institutions Reform, Recovery and Enforcement Act; and (3) breached fiduciary duties by failing to supervise, oversee and monitor Bristol and its underwriting of loans funded by Ameribank.

On December 18, 2012, the parties filed a Stipulation to Extend Time to Respond to Complaint and Jury Trial Demand until January 14, 2013. (Document No. 17.) The parties submitted a proposed Protective Order specifying procedures respecting confidential documents and materials on January 11, 2013 (Document No. 20.), and the undersigned signed and filed the Protective Order on January 15, 2013 (Document No. 29.). On January 14, 16 and 18, 2013, Defendants filed Motions to Dismiss, Memoranda in Support and documents which they requested to be filed under seal.

(Document Nos. 21 - 28 and 30, 31 and 33.) On January 28, 2013, Plaintiff filed its Consolidated Response in Opposition to Defendants' Motions to Dismiss. (Document No. 38.) On February 4 and 11, 2013, Defendants filed their Replies. (Document Nos. 39 - 41.) The parties made their Rule 26(a)(1) disclosures on March 20, 2013. (Document Nos. 44 - 47.) On May 6, 2013, Mr. Dunham served his First Set of Requests for Production of Documents on Plaintiff. (Document No. 50.)

On June 10, 2013, Plaintiff filed a Motion for Protective Order Concerning Discovery of Electronically Stored Information [ESI] and Supporting Brief. (Document No. 56.) Plaintiff states that when Ameribank failed and Plaintiff took over as its receiver, it took possession of bank records consisting of "massive amounts of electronically stored information" which it maintains on its Data Management Services iConnect e-discovery and litigation support platform. Plaintiff states that after the Rule 26(f) conference in this case, it provided Defendants with a proposed protocol for producing electronically stored information and "numerous discussions and written communications" followed which resulted in "various revised versions accommodating most of the defendants' requests."[1]

---

[1] FDIC-R's Protocol Regarding Electronically Stored Information (Document No. 56-2.) provides as follows:

> 5.    FDIC-R or its contractors are in possession of certain ESI related to the Bank and obtained from the Bank's legacy systems ("Bank ESI"). The Bank ESI is maintained by FDIC-R in the Data Management Services ("DMS") databases listed in attached Exhibit B. FDIC-R represents that the Bank ESI listed in Exhibit B is a complete and accurate listing of all the ESI processed by FDIC-R from the Bank. The FDIC-R shall cause searches to be conducted of the Bank ESI and shall process and produce any and all responsive documents to Defendants in accordance with the procedure set forth in the ESI Protocol in the format specified in Exhibit A. Defendants reserve the right to seek the assistance of the Court, if necessary, to search additional ESI in the possession or control of FDIC and the FDIC-R, including ESI created or modified by the FDIC-R in connection with its receivership over the Bank.

6.     Defendants shall collectively identify a set of search terms and designated custodians. The FDIC-R will run the search terms across the designated custodians' Bank ESI. Thereafter, the FDIC-R shall provide a search term hit report to Defendants which identifies the query and, for each database, the number of unique documents which hit upon each identified search term requested by Defendants. The FDIC-R shall also identify in the hit reports the number of documents included in the family of each document containing a search hit, and, solely for forensically collected data (contained in the "AM Forensic Data" database"), the number of search hits per custodian. With respect to this search term process, Defendants are entitled to a maximum of seven (7) iterations of custodians and search terms and hit reports (provided that Defendants provide the FDIC-R with all sets of custodians and search terms before documents are exported to a Relativity database pursuant to paragraph 7 below). If, however, a producing party is aware of a relevant document that is not triggered by the application of the search terms, the producing party shall produce that document. If the Parties are unable to agree upon a final set of search terms, any Party may raise the issue with the Court by motion.

7.     After the Parties have agreed upon search terms or established search terms with the assistance of the Court pursuant to Paragraph 6 above, FDIC-R shall export to a Relativity database as designated by the Defendants the documents captured by the agreed upon search terms. The FDIC-R will not run any new search terms after the documents are exported to the Relativity database. Defendants shall be granted access to the Relativity database for inspection of the documents and may designate the documents they wish to have delivered. Within a reasonable time after being granted access to the Relativity database, the Defendants shall conduct a preliminary review of the documents to determine if search terms agreed upon pursuant to paragraph 6 above should be run across any additional custodians. If so, Defendants shall promptly notify the FDIC-R that they designate the additional custodians. The FDIC-R shall run the agreed upon search terms across the additional designated custodians and export the captured documents to the Relativity database.

8.     The Parties reserve the right to claim privilege or work product protection.

9.     Defendants shall collectively pay $0.06 per page for all Bank ESI that is produced to Defendants as provided in Section VIII of Exhibit A. The FDIC-R will pay for the costs of Relativity; provided that each Defendant shall promptly inform the FDIC-R in the event that he or she no longer requires access to the Relativity database. Additionally, disputes about the continued use of the Relativity database shall be resolved by the Defendants who are parties to the dispute assuming responsibility for paying for Relativity costs.

10.   Regardless of the protocols set forth in this Protocol, the FDIC-R shall

4

Plaintiff states that "the parties have agreed on all terms of the ESI protocol except for one: whether the defendants will supply search terms and conduct a 'quick-peek' review." Plaintiff states that it proposes that defendants supply search terms which Plaintiff would apply to the electronically stored information. Plaintiff would then provide defendants with "hit reports"indicating the number of documents and data hits. Plaintiff would then copy the documents and data hits "to Relativity, a third party document review platform." Defendants would then have unlimited access to the documents in "Relativity" for "quick-peek" review and would identify documents for production. Plaintiff would then conduct a privilege review of the documents identified for production, Bates stamp them and produce electronic copies of them for 6 cents a page. Plaintiff states that it filed its Motion for Protective Order Concerning Discovery of Electronically Stored Information and Supporting Brief upon receiving Mr. Dunham's Request for Production of Documents in May, 2013. Citing Federal Rule of Civil Procedure 26(b)(2)(B) establishing specific limitations on discovery of electronically stored information, Plaintiff asserts that relevant documents contained within the electronically stored information in its possession are not reasonably accessible and their production would be unduly burdensome and expensive without a search term, quick-peek process with Defendants supplying the search terms. Plaintiff asserts that such a process is in conformity with Federal Rule of Civil Procedure 34 as it balances Plaintiff's obligation to provide documents responsive to Defendants' requests and Defendants' needs for information underlying the claims against them and their defenses. Plaintiff further argues that, as Ameribank's officers and directors familiar with Ameribank's electronically stored information, Defendants are better positioned to create search

---

produce any and all non-privileged ESI it intends to rely upon in support of
any claim or defense during the course of the litigation.

terms which would identify relevant information. Finally, Plaintiff urges that Rule 34 requires Defendants to pay for the copying of the electronically stored information produced. Plaintiff attaches as exhibits to its Motion (1) a copy of the Mr. Dunham's First Set of Requests for Production consisting of 36 separate requests[2]; (2) Protocol Regarding Electronically Stored

---

[2] Mr. Dunham's Request for Production specified the forms for producing ESI and required that it "be produced on external hard drives, readily accessible computer or electronic media." Mr. Dunham requested that Plaintiff produce the "Bank File" and "Credit Files" for each Bristol loan between June 1, 2006, and January 31, 2007 (Nos. 1 and 2.); semi-monthly delinquency reports provided by Bristol pursuant to the Bristol Agreement (No. 3.); the loan files which Bristol made and delivered in 2007 for the loans identified in the Complaint (No. 4.); documents pertaining to Ameribank's request to assume responsibility for servicing Bristol loans funded by Ameribank and the request for and receipt of documents from Bristol (No. 5. and 6.); documents pertaining to the origination of loans by Bristol or the funding of loans by Ameribank in the New Orleans/Gulf Coast area (No. 7.); documents relating to any agreement or communication between Bristol and specified persons and entities (No. 8.); documents relating to any agreement or communication between Bristol and Ameribank respecting specified persons and entities (No. 9.); documents relating to any overriding guaranty of repayment of Bristol-originated loans (No. 10.); documents relating to the financial involvement of a specified person and entity in Bristol loans (No. 11.); documents indicating Ameribank's knowledge of that person's interests in Bristol loans (No. 12.); reports of investigations respecting fraud or other malfeasance conducted in behalf of Amerbank, FDIC-R, OTS and other regulators (No. 13); 2007 reports by Crowe Chizek concerning Bristol (No. 14.); documents pertaining to termination or modification of the terms of the Bristol Agreement (No. 15.); notebooks/files containing results of Ameribank's audits/due diligence/review/ inspection of the Bristol loans pursuant to the Bristol Agreement (No. 16.); documents generated and maintained by Mr. O'Brien through January 17, 2007, and by Ameribank after January 18, 2007, pertaining to tracking of delinquencies on Bristol loans, receipt of loan documentation from Bristol, balances owed and payments made on Bristol loans and Bristol loans audited by Ameribank (Nos. 17 and 18.); basic information (account number, borrower name property address, etc.) respecting Bristol loans maintained on specified software (No. 19.); documents pertaining to Ameribank's line of credit to Bristol (No. 20.); communications to or from OTS or other regulator regarding the concentration of Bristol loans (No. 21.); documents relating to the consideration and establishment of internal concentration limits on Bristol loans (No. 22.); documents indicating OTS or other regulator views and comments on the internal concentration limit of Bristol loans at Ameribank (No. 23.); communications during the period from January 1, 2004, and September 19, 2008, between specified persons and with governmental entities respecting Bristol loans funded by Ameribank (No. 24.); communications between Ameribank and Bristol during the period from January 1, 2004, and September 19, 2008 (No. 25.); communications after May 19, 2004, between FDIC-R, OTS, FDIC and other regulators and Bristol (No. 26.); communications between Bristol and any external auditing firm retained by Bristol (No. 27.); documents pertaining to efforts of Mr. Sutton,

6

Information; and (3) the Declaration of Mr. Ray Rivard, an Information Technology Specialist in

the Litigation Support Group of the Plaintiff's Legal Information Technology Unit.[3]

---

Ameribank or American Bankshares, Inc., to purchase Bristol (No. 28.); Ameribank's loan policies and procedures including those relating to the Bristol loan program (No. 29.); financial statements relating to the assets, liabilities and net worth of a specified person (No. 30.); documents relating to Mr. Dunham's proposed buyout of Mr. Sutton's and American Bankshares, Inc's interests in Ameribank (No. 31.); Ameribank's audited financial statements from 2004 through 2008 (No. 32.); Ameribank's independent auditors' reports and/or audits for 2004 through 2008 (No. 33.); minutes of Ameribank's Board of Directors meeting and information provided to Board members in 2004 (No. 34.); communications and agreements between FDIC-R and Ameribank's former officers or directors (No. 35.); and documents pertaining to any claim or lawsuit against Bristol including communications about settlement or dismissal of the claim or lawsuit (No. 36.).

[3] Mr. Rivard states in his Declaration as follows:

4. The FDIC has a contract with Lockheed Martin Corporation . . . to manage electronic discovery in litigation involving failed banking institutions for whom the FDIC is appointed receiver, including Ameribank, Inc. . . .. Lockheed manages the electronically stored information ("ESI") stored on the FDIC's internal database system, DMS iConnect ("DMS").

5. Lockheed also hires and oversees subcontractors . . . to handle other aspects of the discovery process. In most cases, the FDIC does not pay subcontractors . . . directly, but only through Lockheed.

* * *

12. The FDIC has already incurred substantial costs related to Ameribank ESI, and anticipates incurring more. At the outset, immediately after being appointed Receiver for Ameribank upon the Bank's failure, the FDIC collected 0.345 terabytes (or 353.28 gigabytes) of ESI (comprised of 3,086,689 Oracle data records and approximately 2,079,755 native/imaged files) possessed by the Bank. This data includes 23,146 scanned paper documents.

13. Although not required to do so to satisfy its receivership obligations, the FDIC also processed and uploaded most of its material into DMS in order to streamline and hasten the discovery process in anticipation of litigation against, inter alia, the former directors and officers of the Bank. For example, the FDIC scanned those paper documents it anticipated would be relevant to litigation against former directors and officers, and also conducted optical character recognition processing on those documents. The FDIC also processed both these likely relevant paper documents and ESI for uploading onto DMS. The collection, processing, and uploading of these materials into DMS cost the FDIC approximately $145,000.

14. Pursuant to FDIC's Proposed Proposal (sic), the defendants will supply the search terms that the FDIC will run across the Ameribank ESI to identify

On June 27, 2013, Defendants filed their responses in opposition to Plaintiff's Motion. (Document Nos. 59, 60 and 61.) Mr. Baldini first contends that the Court should deny Plaintiff's Motion because its  proposed protocol for producing ESI "is inconsistent and cannot be reconciled with Rule 34 of the Federal Rules of Civil Procedure." (Document No. 59, p. 5.) Mr. Baldini asserts that "the FDIC's proposed protocol . . . would result in a 'document dump' that would require a substantial amount of time, effort and money to sort into anything remotely useful. * * * This process is clearly inconsistent with both the letter and the spirit of Rule 34(b), which expressly contemplates that documents and ESI are to be produced to the requesting party in a manner that allows the requesting party to meaningfully utilize them in its defense, without any need to engage

---

presumptively responsive ESI appropriate for review during the Quick Pook Production. To assist the defendants in identifying an appropriate subset of responsive ESI, the FDIC will run numerous variations or proposed search terms through its DMS databases and provide "hit counts," i.e., the number of responsive items of ESI in the selected databases. The FDIC will also compile and provide to the defendants a chart describing the 87 DMS databases in order to assist the defendants in identifying the databases most likely to contain ESI relevant to this litigation.

15. After the FDIC runs the search terms and provides the hit reports to the defendants, the FDIC will export the responsive ESI from DMS to Relativity, a third-party platform, for the Quick Peek Production described above. This process costs the FDIC $450 per gigabyte. The FDIC does not seek to recoup any portion of this cost through its requested $0.06 per page fee for making and delivering copies of ESI.

16. In order to make and deliver electronic copies of the tagged ESI, the FDIC will first "image," i.e., convert form native files to TIFF format, the selected ESI. In order to make and deliver electronic copies of ESI, the FDIC will also affix Bates numbers and confidentiality designations to each item of ESI. After providing Bates numbers and confidentiality designations, the FDIC will transfer electronic copies of selected ESI onto physical media and then deliver that physical media to the defendants.

17. The FDIC's general $0.06 per page rate . . . is based on the FDIC's estimates of average production costs in a typical case, quotes the FDIC received from Lockheed, and a review of market prices for services that the FDIC provides to the defendants in connection with making and delivering electronic copies of requested ESI.

in costly post-production processing." (<u>Id.</u>, pp. 6 - 7.) Acknowledging that search terms must be utilized to identify relevant electronically stored information, Mr. Baldini contends that, because it has had possession and control of the Ameribank ESI for five years and has "technological expertise and experience sufficient to search the documents in its possession and respond to discovery requests", the FDIC is clearly in the best position to develop and propose the terms most likely to identify documents responsive to the Rule 34 requests that have and will be filed." (<u>Id.</u>, p. 12.) Mr. Baldini contends further that Ameribank ESI is not inaccessible because it does not fall within one of three categories of ESI which have been recognized as inaccessible – deleted ESI, ESI on disaster recovery backup tapes and legacy ESI held on *altmodisch* systems – and Plaintiff holds the Ameribank ESI "on computer systems specifically designed to facilitate the identification and production of ESI . . .."  (<u>Id.</u>, p. 14.) Second, Mr. Baldini contends that the Court should deny Plaintiff's Motion because Plaintiff's proposed protocol is unfair and prejudicial to Defendants. Mr. Baldini states that Plaintiff had possession and control of Ameribank's ESI for four years prior to filing suit against Defendants, and accessed and analyzed the ESI and identified ESI in support of its claims. (<u>Id.</u>, p. 15.) Mr. Baldini asserts that requiring Defendants to search the Ameribank ESI for documents in response to their requests when Plaintiff has already devised ways of accessing the ESI is unfair and prejudicial to Defendants. Finally, Mr. Baldini contends that Plaintiff's proposed ESI protocol has "at least two additional fundamental flaws": (1) it only cover Ameribank ESI after the receivership, not before and after it; and (2) the requirement that Defendants pay for the production of ESI is contrary to the Rules of Civil Procedure and ruling of Courts including the Fourth Circuit. (<u>Id.</u>, p. 17.) Mr. Baldini attaches as exhibits to his Response a copy of (1) Northern District of Georgia Judge Steve Jones' June 3, 2013, decision in <u>FDIC v. Briscoe</u>, Civil Action No.

1:11-cv-2303-SCJ  and (2) Plaintiff's Motion in <u>Deutsche Bank National Trust Company v. FDIC,</u> <u>et al.,</u> Case No. 1:09-CV-1656-RMC, in the United States District Court for the District of Columbia requesting that Defendant JP Morgan Chase Bank be required to organize its response to the FDIC's request for production to correspond with its requests.

 Mr. Dunham, Mr. Cogswell and Mr. O'Brien contend similarly in their Response (Document No. 60.) that Plaintiff's Motion should be denied because Plaintiff's proposed protocol "contrary to the Rules of Civil Procedure – attempts to shift the entire burden of identifying documents responsive to defendants' requests *onto defendants, at defendants' cost*." (Emphasis in Defendants' Response.) Defendants Dunham, Cogswell and O'Brien state that prior to the filing of the Complaint in this matter, Plaintiff produced files pertaining to the Bristol CRA loans which are the subject of its Complaint but they were files created and maintained by Bristol and not Ameribank. (<u>Id.</u>, p. 4.) Defendants Dunham, Cogswell and O'Brien state that Ameribank maintained files containing Bristol's certification and loan approvals and checklists indicating Ameribank's tracking and receipt of Bristol's documents. These files, Defendants claim, were maintained in green file folders in Ameribank's Florida Branch and were not kept electronically or scanned. Defendants Dunham, Cogswell and O'Brien further claim that documents indicating the results of Ameribank's quarterly audits of Bristol loans were kept in notebooks at Ameribank's Florida Branch but do not know what search terms might work to retrieve them from Plaintiff's ESI. (<u>Id.</u>, p. 5.) Next, Defendants dispute Plaintiff's claim that the number of electronically stored documents pertinent to this matter is massive stating that Plaintiff "already produced to defendants pre-litigation a significant portion of the more obvious documents pertinent to this case, i.e., various Bristol-related loan files . . .; various but incomplete sets of Board of Directors minutes and reports; the MLSS Agreement and

underwriting guidelines; various examination reports; and a collection of other miscellaneous documents." (Id., p. 6.) Because Plaintiff has done so, Defendants Dunham, Cogswell and O'Brien state, their Requests for Production of documents have been "narrow and targeted * * * to avoid a document dump of Bristol files." (Id., p. 7.) Defendants then mention that they have proposed "a substantially modified ESI Protocol" in conformity with the applicable Federal Rules of Civil Procedure and note that they would consider working with Plaintiff in the development of search terms which might yield relevant documents.[4] (Id., p. 8.) Defendants Dunham, Cogswell and O'Brien argue that the Rules of Civil Procedure require the recipient of requests for production of

---

[4] Defendants' proposed Joint Protocol Regarding Electronically Stored Information (Document No. 60-7.) provides as follows:

> 3.    The provisions set forth in Exhibit A shall govern the format of the production of ESI for purposes of Rule 34(b)(1)(C) of the Federal Rules of Civil Procedure. However, nothing in this Protocol or Exhibit A will prevent the right of any Party to inspect original hard copy documents upon request.
> 4.    If search terms are used, the producing Party shall include with its production a list of all search terms utilized in searching for documents responsive to discovery requests.
> 5.    The Parties reserve the right to claim privilege or work product protection.
> 6.    Regardless of the provisions set forth in this Protocol, the Parties shall produce any and all non-privileged ESI they intend to rely upon in support of any claim or defense during the course of the litigation.
> 7.    The parties shall log any documents reasonably believed to be not discoverable because it is privileged, subject to the work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege.

Exhibit A attached to Plaintiff's Protocol Regarding Electronically Stored Information and Defendants' proposed Joint Protocol Regarding Electronically Stored Information is identical specifying the formats for producing different kinds of ESI (email, other Windows-Based ESI, spreadsheets and PowerPoint files and load files); the file types which will be processed for production; the procedure for eliminating duplicates and streamlining discovery; how documents will be produced ("hard drive, readily accessible computer or electronic media"); and how documents containing color and are in physical hard-copy will be produced.

documents to make reasonable efforts to search for documents and information responsive to the requests and in other cases Courts have required Plaintiff to do so respecting ESI. (Id., pp. 10 - 11.) Defendants then assert that several Courts have indicated that using search terms to access ESI in "Relativity" has proven problematic because the ESI was disorganized and some documents were not amenable to an electronic search. (Id., pp. 11 - 13.) Defendants Dunham, Cogswell and O'Brien state that they have experienced problems in obtaining bank and audit files from Plaintiff "perhaps because they have not proven to be amenable to an electronic search." (Id., p. 13.) Defendants assert that, contrary to Plaintiff's claim, they are not better positioned to craft search terms for finding information in ESI because (1) they left Ameribank about 20 months before it went into receivership and the Bank had two changes of management and the Florida branch closed after they left so that bank records were potentially transferred about and (2) they do not know how Plaintiff organized and scanned the bank records when Plaintiff took over as receiver and the bank records were not scanned into a litigation compatible program. (Id., pp. 14 - 15.) Defendants Dunham, Cogswell and O'Brien next assert that, because Plaintiff has not kept documents and information as ESI as Ameribank did in the course of its business, Plaintiff cannot now rely upon Rule 34(b)(2)(E)(i)'s "usual course of business" provision and therefore "must organize and label [documents] to correspond to the categories in the request[s]". (Id., pp. 16 - 17.) Finally, Defendants contend that the six cent per page charge which Plaintiff would have the Court impose "is inapplicable and makes no sense" because documents and information will be produced in a computerized format. (Id., pp. 18 - 20.) Mr. Dunham, Mr. Cogswell and Mr. O'Brien attach as exhibits to their Response a copy

of (1) Plaintiff's Response to Mr. Dunham's First Set of Requests for Production of Documents;[5]

(2) cases cited in their Response; (3) a January 20, 2012, letter from Defendants' counsel to the

FDIC's counsel requesting documents related to the FDIC's claims against Defendants Dunham,

Cogswell and O'Brien; (4) an Audit Report of the Department of the Treasury's Office of Inspector

General containing a "Chronology of Significant Events" including "examinations conducted and

enforcement actions taken by the Office of Thrift Supervision between April 30, 1997, and

September 19, 2008; (5) the Affidavit of David G. Cogswell; (6) Plaintiff's Rule 26(a)(1)

Disclosures; (7) Joint Protocol Regarding Electronically Stored Information; (8) Plaintiff's Motion

in Deutsche Bank National Trust Company v. FDIC, et al., Case No. 1:09-CV-1656-RMC, in the

United States District Court for the District of Columbia requesting that Defendant JP Morgan Chase

Bank be required to organize its response to the FDIC's request for production to correspond with

its requests; (9) Defendants' Brief in Support of the FDIC to Produce Documents in FDIC v.

---

[5] Plaintiff responded to each of Mr. Dunham's 36 Requests contained in his First Set of Requests for Production of Documents as follows:

Objection. The Federal Deposit Insurance Corporation. As receiver for Ameribank, Inc., ("FDIC-R") maintains Ameribank information in the form of electronically stored information ("ESI"). Despite months of negotiation, counsel for plaintiffs (sic), including counsel for Mr. Dunham, have not agreed with FDIC-R's proposed ESI Protocol, a copy of which is attached as Exhibit 2 to FDIC-R's motion for protective order (Doc. 56) served simultaneously with this response. FDIC-R is willing and able to follow this protocol and produce the ESI as it is kept in the usual course of business and in the form in which it is ordinarily maintained, subject to the Protective Order dated January 15, 2013 (Doc. 29). FDIC-R objects to defendant's proposed form of ESI production, the burden and expense of which outweighs its likely benefit, and which does not promote the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. As requested by defendant, the information is not reasonably accessible because of undue burden and cost, Fed. R. Civ. P. 26(b)(2)(B), as demonstrated in the FDIC-R's motion for protective order served simultaneously with this response.

Blackwell, et al., Civil Action No. 1:11-CV-3423, in the Northern District of Georgia; and (10) the

October 1, 2007, Report of Examination of the Office of Thrift Supervision.[6]

Mr. Sutton adopts Mr. Baldini's arguments contending that Plaintiff's "proposed ESI

Protocol is an extreme departure from discovery norms and fundamental fairness." (Document No.

61.) Mr. Sutton asserts that Plaintiff has had possession and control of and access to the Ameribank

ESI for years and it is inconsistent with the rules of discovery to require Defendants now to devise

ways of searching the ESI for documents relevant to Plaintiff's claims and Defendants' defenses.

On July 9, 2013, Plaintiff filed its Reply in Support of its Motion. (Document No. 62.).

Citing 12 U.S.C. § 1820(f) which provides that any documents kept by a federal banking agency in

an electronic format shall be treated as original records for all purposes, Plaintiff claims that it is

required to produce documents as they are maintained in the ordinary course of its business. It is not

required to produce documents as they were maintained in the ordinary course of Ameribank's

business because Ameribank ceased to exist when Plaintiff took over as receiver. Plaintiff states that

"[i]f the defendants were to cooperate in discovery, agree on the ESI protocol, and actually attempt

to follow it, they would find that the documents in the electronic database are organized and can be

searched consistently with a very detailed written inventory, which specifies the contents of each

and every folder, as well as the location of the bank branch – and even the location within the bank

branch – where that information was found at the time the FDIC-R took over as receiver." Plaintiff

urges that it is not reasonable to require it to search the Ameribank ESI for documents responsive

to Defendants' requests when under its proposed protocol it is fair, more efficient and less expensive

---

[6] Defendants have attached a copy of this latter document to their request that it be filed under seal. (Document No. 58.) The District Court granted their request by Order filed on November 20, 2013. (Document No. 124.)

to require it to make the ESI available to Defendants to search.

By Judgment Order filed on September 30, 2013 (Document No. 91.), and Memorandum Opinion and Order filed on November 14, 2013 (Document No. 120.), the District Court denied Defendants' Motions to Dismiss.

The Court held a hearing upon Plaintiff's Motion for Protective Order Concerning Discovery of ESI on October 11, 2013. Counsel for Plaintiff, Mr. Springer, began by introducing a chart which indicated that there were about 1,350 Ameribank/Bristol loans between 2004 and 2007; 331 of those were active when Ameribank failed in September 2008; and 32 of those between September, 2006, and September, 2007, are listed as examples in the Complaint. (Document No. 119 (transcript), p. 6.) Mr. Springer reiterated that in early 2012, Plaintiff produced 46,000 pages of documents relating to the 32 loans, meeting minutes and other documents. (Id.) Counsel for Mr. Cogswell, Mr. Dunham and Mr. O'Brien, Mr. Hoblitzell, stated that the Chart which Mr. Springer introduced "makes our point in stark detail." (Id., p. 8.) Mr. Hoblitzell stated that while Plaintiff provided documents pertaining to the 32 loans listed in the Complaint, under Plaintiff's proposed ESI protocol, Plaintiff would avoid altogether the responsibility of responding to Defendants' discovery requests as the Rules provide and instead have Defendants develop search terms to probe "the entire universe of bank information, even though the case only deals with one lending relationship and 32 loans for a limited period of time." (Id., p. 9.) Second, Mr. Hoblitzell stated that a search of the ESI would likely not produce certain "credit and bank files" otherwise referred to as "the green files" which were maintained by Ameribank and other documents including Ameribank's quarterly audits of Bristol loans. (Id., pp. 10 - 13.) Mr. Hoblitzell introduced a document entitled "Screenshots from Master BHML Serviced Spreadsheet Produced by FDIC-R 9-21-13" claiming that it evidences that

15

the "credit and bank files" for October, 2006, loans exist as the document has a "credit and bank file" column indicating the dates of numerous documents. Third, Mr. Hoblitzell stated that Defendants left their positions at Ameribank in 2006 and 2007 and after they left, Ameribank's Florida branch closed, all of the loan files were shipped to Ohio, Ameribank failed and Plaintiff took over as receiver copying Ameribank's documents and record electronically. Mr. Hoblitzell asserted that Plaintiff admitted in its Reply that in copying the documents and records electronically, it did not keep them organized in files as Ameribank had. Mr. Hoblitzell stated that for these reasons, shifting the entire burden of doing a document responsive review to the defendants is really prejudicial and is really not in accordance with the rules." (Id., p. 15.) Mr. Springer responded that the Defendants' claim that the ESI documents and records are disorganized and their search of the ESI might not produce relevant documents and records is "total speculation." (Id., p. 18.)[7] After all, Mr. Springer pointed out, Defendants have not tried to search for documents and records under the proposed protocol. Mr. Springer indicated that this case is about 32 loans and if Defendants want to look at documents and records pertaining to all 1,350 Ameribank/Bristol loans, they may do so under Plaintiff's proposed ESI protocol. (Id., pp. 19-20.) In replying, Mr. Hoblitzell indicated that Defendants read the Complaint more broadly to allege that they acted negligently respecting loans originating through Bristol over the entire period from 2004 through 2007. (Id., pp. 21 - 22.) Mr. Hoblitzell stated that it is evident in this case and from the experiences of parties in other FDIC cases that "these protocols and these kind of document dumps don't make it reasonably possible to find these documents without having the party that is producing them do the responsiveness review

---

[7] Mr. Springer referred to Mr. Dunham's Requests for Production Nos. 6, 7 and 19 indicating that responding to them would be "extraordinarily burdensome and highly irrelevant." (Document No. 119, pp. 18 - 19.)

that the Rules of Civil Procedure require them to do." (Id., p. 25.) Mr. Springer responded that the

protocol proposed in this case or some derivative of it has been adopted and utilized in other cases

and worked well and emphasized his client's willingness to cooperate in the process of obtaining

the ESI which Defendants are requesting. (Id., pp. 26 - 27.) Mr. Hoblitzell replied indicating that,

unlike the protocol proposed in this case, protocols in other cases were two phase protocols requiring

that Plaintiff do the initial search and then collaborate with Defendants in conducting further

searches of ESI. (Id., pp. 28 - 29.) Counsel for Mr. Baldini, Mr. Boone, responded then asserting that

Plaintiff has not presented grounds for the issuance of a protective order. (Id., pp. 32 - 33.) Mr.

Boone stated that while Plaintiff has provided "a laundry list" of the types of information in the ESI

(email, Microsoft Word files or spreadsheets, for example), it has not indicated how much of the

total amount of ESI each type comprises. Mr. Boone stated that "some of those document types or

data types indicated by the FDIC are likely not to be important in this litigation or subject to

scrutiny." Mr. Boone argued that Plaintiff has therefore not demonstrated how responding to

Defendants' Requests for Production is burdensome. (Id., pp. 33 - 34.) Mr. Boone stated that

Defendants are most interested in obtaining ESI which was initially in paper form and estimated that

"[w]e're really talking about probably 17,000, 20,000 pages of documents which is far different than

. . . the thousands of banker boxes that we . . . were told about in the FDIC's motion . . . ." (Id., pp.

35 - 36.) Mr. Boone further noted that Plaintiff had the ESI and accessed, examined and analyzed

it for four years before filing this suit. (Id., p. 36.) Mr. Boone then discussed the Advisory

Committee Notes respecting the 2006 amendments to Rules 26 and 34 respecting discovery of ESI

indicating that the amendments applied the basic procedure for producing documents in response

to document requests as it had existed before to ESI and "the FDIC protocol would abrogate Rule

34(b)." (Id., pp. 37 - 39.) Mr. Boone then asserted that whereas Plaintiff has had access to the ESI

for four years before initiating this matter, resources and much experience in litigation of this nature

whereas Mr. Baldini and Mr. Sutton are elderly, kept records and communicated mainly in hand

writing, knows very little about computers and has no experience in litigation of this nature. (Id., 40

- 42.) Citing and discussing decisions of other Courts which support his client's position and the

2006 Advisory Committee Notes, Mr. Boone urged that the Rules anticipate that the party required

to respond to a request for production of documents and holding ESI will develop search terms and

conduct a search initially and then work with the requesting party to expand and refine the search

as necessary. (Id., 43 - 45.) Mr. Boone then stated that when Plaintiff produced the 46,000

documents in PDF format, it had not focused on the 32 loans specified in the Complaint and "the

defendants were given a lump, a mountain of documents . . .. There was no organization. There was

no foldering. There was no labeling, no categorization." The Defendants, Mr. Boone asserted, had

the burdensome task of examining the documents for those which were relevant and many were not.

This, Mr. Boone stated, illustrates the problem with Plaintiff's proposed protocol. (Id., pp. 45 - 46.)

Mr. Boone further observed that Defendants are not limited in proving their defenses to Plaintiff's

allegations to using documents pertaining only to the 32 loans specified in the Complaint but rather

may do so using documents demonstrating their diligence over the entire time they were directors

and officers of Ameribank. (Id., pp. 46 - 47.) Mr. Boone concluded arguing that 12 U.S.C. § 1820(f)

pertains to the authentication of documents and has no bearing upon production of documents and

requiring Defendants to pay for documents produced in inconsistent with the Rules and Fourth

Circuit precedent and unreasonable in the context of ESI inasmuch as all of the ESI could be

downloaded onto a hard drive costing about $100. (Id., pp. 47 - 50.) Mr. Bosher then spoke in behalf

of Mr. Sutton emphasizing that the general and serious nature of the allegations in this case require, as Plaintiff has acknowledged, the search of and production of documents, including notes and emails of the other Defendants and bank employees, from the entire bank of ESI. (Id., pp. 54 - 55.) Mr. Bosher stated further that Mr. Sutton left his own notes at the bank and wondered how those notes would be located through the use of search terms. (Id., pp. 55 - 56.) Mr. Springer then replied in behalf of Plaintiff that "[i]n our protocol, it does speak to other methods to streamline discovery and says the parties agree to meet and confer in good faith about technology and processes." (Id., p. 56.) Mr. Springer stated that the protocol allows access to the documents which Defendants are requesting; Plaintiff provided documents to Defendants Bates stamped and organized, and Plaintiff otherwise has made access to the documents available to Defendants. (Id., pp. 56 - 57.) Mr. Springer stated further that most of the decisions of other Courts have adopted the protocol. (Id., pp. 57 - 58.) Mr. Springer then cited the 2006 Advisory Committee Notes respecting the 2006 amendment of Rule 34 asserting that "the Court is called upon to set the right balance and weigh the burden and the expense of this." (Id., p. 59.) Mr. Springer urges if Defendants are going to make all encompassing requests for production, they, having familiarity with the documents from their work with Ameribank, should be required to create search terms to facilitate production of the documents which they are requesting. (Id., pp. 59 - 60.)

Defendants filed their Answers to Plaintiff's Complaint on October 28, 2013. (Document Nos. 108 - 110.) Defendants deny Plaintiff's allegations of liability and assert numerous defenses including Bristol's contributory and comparative fault; superseding and intervening acts and omissions of Bristol the OTS and Plaintiff; the unanticipated decline in real estate values; and reasonable reliance upon Ameribank management, professional advisors, bank examiners and

19

regulators.

On November 14, 2013, Plaintiff filed Supplemental Authority in Support of its Motion, a copy of an October 23, 2013, Memorandum Opinion of Northern District of Illinois Judge John Grady in <u>FDIC -R v. Giannoulias, *et al.*</u>, Civil Action No. 12-C-1665. (Document No. 121.) On November 20, 2013, Mr. Baldini filed a Response to Plaintiff's Supplemental Authority in Support of its Motion. (Document No. 123.)

## **DISCUSSION**

The Federal Rules of Civil Procedure contemplate that in conjunction with disclosure, civil discovery is a process of elucidation and clarification of facts and circumstances relevant to claims and defenses as presented in pleadings through which the claims and defenses are validated, defined and shaped and issues are sharpened and refined for consideration at the dispositive motion stage and trial of a civil case. The civil discovery process is to be engaged in cooperatively. Violation of the Rules undermines the process.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Discovery is generally limited therefore to nonprivileged information which is relevant to any party's claims or defenses, and relevant information is information which is admissible at trial or might reasonably lead to the discovery of information which is admissible at trial. Plaintiff has not contended that Mr. Dunham's First Request for Production of Documents the  general limits of

discovery as established by Rule 26. Having examined Mr. Dunham's Request, the undersigned finds that most of the 36 requests are focused and specific and probing information which is relevant to the claims and defenses of the parties. One seems vague (No. 6.).

Federal Rule of Civil Procedure 26(b)(2)(B) and (C) establishes a framework for considering whether disputably inaccessible ESI should be produced as follows:

> (B) *Specific Limitations on Electronically Stored Information*. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
> (C) *When required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>> (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The Advisory Committee Notes discuss and explain the 2006 Amendment of Rule 26(b) respecting ESI. The Notes state as follows:

> The responding party has the burden as to one aspect of the inquiry – whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found. The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information. In some cases, the court will be able to determine whether the identified sources are not reasonably accessible and whether the requesting party has shown good cause for some or all of the discovery, consistent with the limitations of Rule 26(b)(2)(C), through a single proceeding or presentation. The good cause

determination, however, may be complicated because the court and the parties may know little about what information the sources identified as not reasonably accessible might contain, whether it is relevant, or how valuable it may be to the litigation. In such cases the parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery.

The undersigned finds that Plaintiff has not shown that the burdens and costs of searching for, retrieving and producing documents and information which it holds electronically in response to Mr. Dunham's 36 requests make the documents and information inaccessible. While, as Plaintiff reports, the initial cost of replicating Ameribank's documents electronically was significant, Plaintiff has not provided any specific information respecting the burdens and costs associated with searching the ESI for documents and information responsive to Mr. Dunham's 36 requests. The number and nature of Mr. Dunham's requests is a factor in assessing the burden and cost to the Plaintiff of responding. Mr. Dunham has served 36 specific and focused requests. In other cases, Defendants have served many more, and Courts have been more inclined to weigh the circumstances more favorably for the FDIC-R. For example, in FDIC v. Brudnicki, 291 F.R.D. 669 (N.D.Fla. 2013), the FDIC-R sued eight former directors and an officer of a failed bank alleging negligence and gross negligence relating to the approval of eleven transactions. Defendants served a request for production containing 94 separate requests. The parties could not agree upon an ESI protocol for production, and Defendants moved to compel. The FDIC-R agreed to produce documents in two phases. The first phase of production consisted of about 61,000 pages of documents and constituted most of the relevant documents in the case. These documents would be produced at no cost to defendants. The second phase of production consisted of documents produced under the proposed ESI protocol and constituted "marginal documents from a relevancy standpoint". Id., p. 675. The ESI protocol for

production was quite similar to that in the instant case. The parties would use agreed upon search terms to locate documents on the DMS database; the documents would be uploaded to Relativity; defendants would identify and request documents they wanted produced; and the FDIC-R would produce the requested documents at a cost to defendants of six cents a page. As in this case, defendants in <u>Brudnicki</u> objected to the protocol because they were required in the first place to provide search terms and pay for the FDIC-R's production. The Court found defendants' objection to providing search terms first "not very persuasive" because as former directors and an officer of the bank, they "stand in the best position to know the names, titles and other information as to the custodians, the names of files and how the Bank's documents are stored." <u>Id.</u>, p. 677 fn. 12. Respecting defendants' objection to paying six cents a page for the second phase production, the Court found authority for shifting the cost of production to defendants under Federal Rule of Civil Procedure 26(b)(2)(C) and considered a proportionality analysis. <u>Id.</u>, p. 676 - 677. The Court determined that defendants requests for production were broad and far reaching, the ESI protocol would yield only marginally relevant documents, the FDIC-R had spent a great deal in gathering and uploading the bank's documents to the DSM database and the cost to defendants of producing documents under the ESI protocol would be "relatively small." <u>Id.</u>, p. 677. The Court concluded that "taking into account considerations of proportionality of the discovery requests in these circumstances, the ESI protocol proposed by the FDIC-R is reasonable, necessary and wholly appropriate." <u>Id.</u> In <u>FDIC-R v. Giannoulias</u>, 2013 WL 5762397 (N.D.Ill. 2013), the FDIC-R sued directors and officers of a failed bank alleging their negligence in approving 20 commercial real estate loans thereby causing the bank to incur substantial losses. It appears that the parties agreed to a two phase discovery protocol. In phase I, Defendants served 242 requests for production of

23

documents, and the FDIC-R produced about $500,000 documents in response. In Phase II, the parties agreed upon 250 search terms to identify relevant information in other ESI, but could not agree upon six search terms. Applying the agreed upon search terms to the ESI resulted in about 150,000 hits, and if the six additional search terms were applied, it would have resulted in about 16,800 further hits. The FDIC-R moved for a protective order and a ruling respecting the search terms which were not agreed upon and defendants moved to compel and to add search terms. The Court found that certain search terms should be added and others should not. Defendants contended that the FDIC-R should be compelled to filter the ESI responsive to the search terms and organize and label it in conformity with their requests. The FDIC-R claimed that doing so would be unduly burdensome and proposed to give defendants access to the ESI responsive to the search terms on a Relativity database and produce any documents defendants requested. Noting that defendants' 242 discovery requests were voluminous and "the vast majority" of the documents and information responsive to the search terms would be responsive to defendants requests, the Court found that the burden upon the FDIC-R of conducting a responsiveness review outweighed the benefit to defendants would receive from it and did not require it. The Court further considered whether in view of the Rule 34(b)(2)(E) standard the FDIC-R should be required to organize and label documents and information in conformity with defendants' discovery requests. Defendants contended that the FDIC-R had not shown that in processing the bank's records electronically it kept them organized as the bank had them in the ordinary course of its business. Because defendants could use metadata to sort and identify the original location of the responsive ESI, the Court stated that "[s]trictly speaking, this may not be production in the 'usual course of business,' but the *practical* difference is elusive. Conversely, requiring the FDIC to organize its production according

to the defendants' numerous discovery requests would impose a substantial burden[.]" The Court therefore did not require the FDIC-R to organize its Phase II production to conform with defendants discovery requests. The Court further did not require the FDIC-R to organize its Phase I production in part because "as executives responsible for the bank's management during the relevant time period, the defendants . . . are arguably more familiar with the documents than the FDIC." The Court withheld in ruling upon the cost issue stating, "consistent with the general presumption in discovery, the FDIC will bear the cost of production as they arise subject to the possibility that we may later require contribution from the defendants."

Based upon the foregoing, the Court finds that the ESI which Plaintiff possesses is reasonably accessible and Plaintiff must provide discovery of it pursuant to Federal Rule of Civil Procedure 26(b)(2)(B) and (C).[8] What then do the Rules contemplate Plaintiff must do in providing Defendants discovery of the ESI?

Federal Rule of Civil Procedure 34(a)(1)(A) provides as follows:

(a) A party may serve on any other party a request within the scope of Rule 26(b):
    (1)      to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
      (A)      any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]

Federal Rule of Civil Procedure 34(b)(2)(E) provides as follows:

---

[8] Plaintiff may have produced some of the documents and information which Mr. Dunham requests in its initial production of documents. To the extent that its further production is cumulative or duplicative, Plaintiff should identify the documents as they were produced initially and are also responsive to Mr. Dunham's request by Bates number or other identifying information.

    (E) *Producing the Documents or Electronically Stored Information*. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

      (i)   A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

      (ii)  If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

      (iii)     A party need not produce the same electronically stored information in more than one form.

The Advisory Committee Notes discuss and explain the 2006 Amendment of Rule 34(b) respecting

ESI. The Notes state as follows:

    Rule 34(b) provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request. The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information.

Clearly, Rule 34 contemplates that upon a parties request to produce ESI, the responding party must

produce it organized and labeled to correspond to the categories in the request unless the responding

party can produce it as it is maintained in the ordinary course of its business. In this case, while it

may be that certain classifications of documents and information may either exist as ESI in

chronological or some other order or be easily susceptible to organization through sorting by

computer or manually as they are examined, it is nevertheless apparent that Plaintiff has not

maintained them electronically as Ameribank did in the ordinary course of its business. Plaintiff

must therefore provide responses to Mr. Dunham's 36 Requests for Production of Documents

organized and labeled to correspond with those requests. See FDIC-R v. Biscoe, Civil Action No.

1:11-cv-2303-SCJ (N.D.Ga. June 3, 2013)(In view of Federal Rule of Civil Procedure 34(b)(2)(i),

the Court concluded that producing documents in folders based upon search terms was not enough because the documents produced would not correspond to defendants' requests. The Court therefore required the FDIC-R to conduct a responsiveness review.); FDIC v. Appleton, CV 11-476-JAK (PLAx), Docket No. 396-1 at pp. 4 - 8 (C.D.Cal. November 29, 2012)(Defendants moved to compel the FDIC to respond to their requests for production of documents claiming that the FDIC did not produce documents in conformity with Federal Rule of Civil Procedure 34 insofar as it failed to produce documents organized and labeled to conform with defendants' discovery requests or as they are kept in the ordinary course of business. The FDIC responded that it gathered the documents in Relativity from a larger database of ESI based upon search terms shared with defendants and made the larger database available to defendants to search. The FDIC stated that it produced documents responsive to each of defendants' discovery requests and was not required to organize them because ESI in Relativity was logical and organized and the FDIC had informed defendants of the contents of the database and the origin of documents there. The Court found no indication that the FDIC had maintained the documents of the bank in the larger database or Relativity in the ordinary course of the bank's business, and therefore the FDIC was not entitled to produce them without organizing and labeling them to conform with defendants' discovery requests. The Court granted defendants' Motion to Compel as to the ESI in Relativity requiring the FDIC to search for all documents in its possession responsive to defendants requests, create a file in Relativity for each of defendants' requests and put documents responsive to each of defendants' requests in its corresponding file. The Court required the FDIC to index all Non-ESI responsive documents which had been produced or would be produced in the future to conform with defendants' requests.) The Rule therefore quite plainly contemplates that Plaintiff must takes steps initially to locate ESI responsive to each of Mr.

Dunham's requests. The Rule does not contemplate that Plaintiff may pass off its responsibility to search the ESI and to provide ESI organized and labeled in conformity with the requests to Defendants. Plaintiff's argument that Defendants should nevertheless assume that responsibility because they are familiar with how Ameribank kept documents and information is not persuasive. Defendant's employment with Ameribank ended several years ago, and Plaintiff has evidently not maintained the ESI as Ameribank had it in the ordinary course of its business. Plaintiff on the other hand has had access to the ESI for a period of several years, has conducted searches for documents and information relevant to its claims and has provided those documents to Defendants. Defendants have had no access to the ESI over the same period of time and therefore have no familiarity or working knowledge respecting the ESI's responsiveness to search terms as Plaintiff does.

Respecting Plaintiff's proposal that Defendant's pay six cents a page for its production of the ESI, the Court finds that production will be in the form which the parties have agreed upon in their Exhibit A attached to their proposed protocols. To the extent that Plaintiff produces ESI in a computerized form, it will not be producing it as so many pages. Rather, it will produce ESI on disks or hard drives the cost of which is substantially less than the cost of producing the ESI in paper form. In any event, the general rule is that the party responding to discovery requests bears the cost of doing so. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S.Ct. 2380, 2393, 57 L.Ed.2d 253 (1978)("Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery.") For these reasons, the Court will not adopt Plaintiff's proposal.

28

It is therefore hereby **ORDERED** that Plaintiff's Motion for Protective Order Concerning Discovery of Electronically Stored Information (Document No. 56.) is **DENIED**. Plaintiff shall takes steps initially to locate ESI responsive to each of Mr. Dunham's requests. Because doing so requires the application of search terms, Plaintiff shall be the first to fashion search terms to bring forth ESI responsive to each request. Having done so, Plaintiff shall then provide Defendants with a list of the search terms which it would apply to the ESI to bring forth documents and information responsive to each request. Defendants shall offer alternatives or modifications of the search terms. The parties shall work together in development of search terms which when applied to the ESI will yield documents and information responsive to Mr. Dunham's request and exclude non-responsive documents and information. There shall be no limit upon the number of iterations of the search terms to be applied to bring forth responsive ESI and eliminate non-responsive ESI. Having culled out ESI in conformity with the search terms, Plaintiff shall upload it to Relativity organized and labeled in conformity with the search terms, make it available to Defendants and produce it in an agreed upon form.

The Clerk is requested to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: March 28, 2014.

R. Clarke VanDervort
United States Magistrate Judge

29